## MATTATUCK MOTORS, INC.
*vs.*
## DOMINICK BARBIERI

Court of Common Pleas    District of Waterbury    File No. 7755

MEMORANDUM FILED JANUARY 31, 1940.

*Robin & Robin,* of Waterbury, for the Plaintiff.

*Maurice P. Wrenn,* of Waterbury; *Miles F. McNiff, Jr.,* of Waterbury, for the Defendant.

McDONOUGH, J.   The motion in this case sets forth five reasons why the motion to dismiss should be granted, as follows:

1. Said City Court of Waterbury, from which said appeal is taken, is located in a city having a population of over fifteen thousand.

2. That said appeal from said City Court of Waterbury was taken since July 1, 1939.

3. On July 1, 1939, chapter 281b of the 1939 Supplement to the General Statutes became effective. Said section 1364e specifically provides that appeals from city, town and borough courts in municpalities having a population of over fifteen thousand may be taken to the Supreme Court of Errors and appeals from courts in municipalities of less than fifteen thousand to the Court of Common Pleas.

4. Waterbury is a city of over fifteen thousand population and by force of this statute appeals in civil cases from the decisions of the City Court of Waterbury must be taken to the Supreme Court of Errors.

5. Section 1370e further provides "when any judgment has been rendered but no appeal has been taken before said date

[July 1, 1939], the provisions of this chapter concerning appeals shall apply to any such case."

The judgment mentioned in the motion is in the amount of $87.98, and costs taxed at $10.57. Both plaintiff and defendant in the action are residents of the City of Waterbury. Under existing law the amount in demand and the place of residence of the respective parties compelled the plaintiff to bring his action in the City Court of Waterbury, as no other court had jurisdiction in the matter.

By the filing of the motion the appellee challenges the jurisdiction of this court and thereby compels us to consider all of the questions that may be involved in this appeal, and the filing of this motion squarely raises the question as to the right of the appellant to bring his appeal to this court, the appellee contending that the method of appeal, as provided in said act, is exclusive and is the only one now existing and that, therefore, the appeal should be dismissed.

This question has been troubling the bench and bar since the passage of this legislation and as the questions involved are of such great importance to the public I am compelled to go more deeply into the matter than would ordinarily be required in passing on motions of this character.

By special act of the General Assembly of the State of Connecticut entitled "An Act Amending the Charter of the City of Waterbury", approved May 25, 1931 (Special Acts of 1931, No. 499, §199, pp. 563, 620), any party feeling aggrieved by final judgment or decree rendered or passed by the City Court of Waterbury, except upon the verdict of a jury and except judgment in cases of summary process "may" appeal to the Court of Common Pleas for the Judicial District of Waterbury.

In addition to the special act last referred to it has been the law of this state since 1882 (Public Acts of 1882, chapter 50) that appeals similar to the one in question from Superior Courts, Common Pleas Courts and City Courts, on questions of fact, might be taken to the Supreme Court of Errors. This matter fully appears in the opinion in the case of *Webb vs. Ambler,* 125 Conn. 543, 544.

It seems to me, therefore, that the wording in section 1364e merely reiterates the same manner of appeal and the question is, ought it be construed, as always since 1882, by the bench and bar, that questions of fact from the city courts were not enter-

tained by the Supreme Court of Errors, as that tribunal passes only upon questions of law and as the machinery necessary to inform the Supreme Court of Errors as to the facts upon which such appeals would lie has not been provided. The question is, did the Legislature intend to disturb this well-established practice, acquiesced in through a long period of years and which must have been known to the Legislature when the legislation in question was passed? When the new act is uncertain and when it may be possible to conform the new legislation with the old and when, in fact, the Legislature merely reiterated the old provision, ought not the court carefully consider all of these facts?

A fundamental rule in construing a statute is that the court will presume that the words of a statute are used in their ordinary signification. *Corbin vs. Baldwin,* 92 Conn. 99, 105.

It will be noted that section 1364e and the special act use the word "may" in referring to appeals from the city court. Is the word "may" in this connection permissive or mandatory? In ordinary practice the word "may" is not treated as mandatory unless in accordance with rules of construction it is necessary so to do. In this instance I do not feel it necessary to treat it as mandatory since it is reasonable and consistent with the special act and provides an alternative method of appeal only.

"The fundamental rule for the construction of statutes is to ascertain the intent of the legislature. This intention must be ascertained from the Act itself, if the language is plain. But when the language used is doubtful in meaning, the true meaning may be ascertained by considering it in the light of all its provisions, the object to be accomplished by its passage, its title, pre-existing legislation upon the same subject, and other relevant circumstances." *Hazzard vs. Gallucci,* 89 Conn. 196, 198.

It is clear that the word "may" as referring to appeals from municipalities having more than fifteen thousand population is used deliberately because the latter part of the same section employs the word "shall." A distinction was made by the Legislature and the plain meaning of the language ought to control.

It appears to me to be the intent of the Legislature to give the right to an aggrieved party to appeal directly to the Supreme Court of Errors, but it is not clear that it intended that such party should no longer have the right to appeal, as in this case, under the provisions of the special act.

It is consistent to allow such alternative method without re-pealing a previously existing method. Under our practice, in certain instances, parties in equitable actions may bring their action to one of several courts, where such courts have concur-rent jurisdiction.

It is significant that nothing appears in section 1364e indicat-ing the legislative intent that the special act referred to has no longer application. Section 1370e may cast some light on the legislative intention because no words of repeal are used in sec-tion 1370e nor limitation fixed on section 1364e, but section 1370e simply provides the time and circumstances when that provision becomes operative. The word "shall", in section 1370e, is mandatory, but only to the extent of obliging an ap-pellee and the courts to recognize the alternative right of ap-peal given to an aggrieved party by section 1364e. To imply from section 1370e that section 1364e is the sole method of appeal and that other methods of appeal heretofore existing are repealed would do violence to the intent of section 1364e, for reasons hereinafter mentioned.

The appellee's contention that 1364e repeals a special act by implication seems to lack force, as such repeals are not favored and occur only when two statutes are so repugnant to each other as to clearly indicate that the latter act was intended wholly or in part as a substitute for the former. If both can be reconciled they must stand together and be accorded con-current effect and operation. *Leete vs. Griswold Post,* 114 Conn. 400, 405.

I am of the opinion that the special act and the general act in question are reconcilable and should be afforded concurrent effect and operation as there appears no such repugnancy as to clearly indicate that the general act was intended as a substi-tute for the special act.

"It is to be noted that the Act appended in the footnote re-peals a number of statutory provisions, but does not expressly repeal §5425, nor does it·contain any general repealing clause. There is no repugnancy between the statutes; and we think there is no repeal by implication. Such repeals are not favored, and when an earlier and later statute can be recon-ciled, it is the duty of the court to so construe them that the latter may not operate as a repeal of the former." *Costa vs. Reed,* 113 Conn. 377, 385.

It is not a question here of whether section 1364e might be construed as a repeal by implication of the special act, but rather whether it is possible for the court to so construe the two acts that no repeal need be implied. It seems so possible to me as the two acts appear consistent and the later act is additional rather than a substitute for the former. The special act in question has been a part of the judicial procedure of the City Court of Waterbury for almost as long a time as the general statute above referred to, first passed in 1882, as the special act was approved March 26, 1895 (Special Acts of 1895, No. 56, §22, pp. 60, 66), and has been carried forward in all subsequent amendments to the charter of the City of Waterbury and in addition to what has been heretofore referred to as the consistent attitude of the bench and bar as to such appeals, the long history of this method of appeal establishes it in custom and law to such a degree that I am compelled to believe it was the intention of the Legislature not to repeal it.

The slight departure in section 1364e which sets forth "in the manner provided by law for appeals from the Superior Court" in no wise changes the legislative intent. This procedure, however, means draft findings, findings by the court, transcripts of part or all of the testimony introduced at the original trial and differs from the established practice in appeals under the special act and from the long custom and practice referred to. It is the duty of our courts in construing a statute to inquire as to "its operation as it may be interpreted." *Corbin vs. Baldwin, supra,* 105.

Matters of practical importance must be considered in making this inquiry. The City Court of Waterbury does not provide a court stenographer and there is no record of the testimony introduced at the trial in that court. It may be said that in the early history of our courts, before stenography came into existence, appeals were taken and findings made without stenographic transcripts. It has been the policy of the courts to keep in step with progress and not retrogress and our Supreme Court has indicated some of the difficulties that confront it in the absence of a transcript of testimony. *Leventhal Furniture Co., Inc. vs. Crescent Furniture Co., Inc.,* 121 Conn. 343, 349.

It is not the province of this court to inquire into the wisdom or non-wisdom of the Legislature in permitting alternative methods of appeal, but it is pertinent in determining the intent.

of the Legislature and in determining whether or not that intent was to constitute the new remedy as the sole remedy and to repeal the existing remedy, to inquire into the effect of the act. It is unreasonable to suppose such intention in the light of difficulties involved by such construction, particularly in the absence of enabling legislation; none is contained in either the general statutes or the special act.

Where the Legislature previously set up a method founded upon necessity and limitations involved in the trial of an action before the city court one cannot believe it would casually substitute a different method involving difficulties that may well prejudice the right of an aggrieved party to appeal.

As bearing upon the legislative intent it might be noted that the statute revision commissioner nowhere, by means of marginal notes or references, signifies the intention of the Legislature to repeal other laws on the same subject. In fact, the heading of the chapter 281b and the title "Minor Courts" shows that the chapter and all the sections are supplemental to chapter 281 of the General Statutes, Revision of 1930. This latter is entitled "Justices of the Peace" and, therefore, they are not to be considered contradictory to that chapter or a substitute for it.

The Legislature, its duly appointed officers or agents, who devised, wrote, edited, annotated and published the General Statutes contained in the 1939 Supplement, have given no hint by notation, method of numbering or any other manner that previously existing legislation on the same subject has been repealed. The absence of these matters and the wording of the sections—particularly the wording of section 1370e—and the failure of the sections of chapter 281b to cover the entire ground necessary for complete revision of the minor court system, and especially the system of appeal, definitely shows that these provisions are to be taken in conjunction with pre-existing legislation and are controlling only to the extent that they modify and are inconsistent wth pre-existing legislation.

I find a very serious question of construction involved as to these new acts as to their validity under the Constitution of the United States and the Constitution of this State. Even though neither gives the right of appeal, either specifically or as an essential to due process of law, the right has coexisted with the constitutions as the result of legislative enactment. "The right to have, by the appeal attempted to be taken, a second hearing

upon such questions, is neither specifically granted by our Constitution nor is such right essential to due process of law." *Etchells vs. Wainwright,* 76 Conn. 534, 540.

Legislation on the subject, however, has at all times been a matter of great importance to the Legislature, the courts, litigants and the general public. So well-founded a right, even though it is not granted by either constitution, but by legislative enactment, cannot be presumed by the court to have been lightly changed or to have been subjected to rules making it impractical in operation without greater reason and without more explicit direction than is apparent in the new statutes.

"It is our duty to approach the question [of the validity of an act] with great caution, examine it with infinite care, make every presumption and intendment in its favor, and sustain the Act unless its invalidity is, in our judgment, beyond reasonable doubt." *Beach vs. Bradstreet,* 85 Conn. 344, 349; quoted in *State vs. Lay,* 86 Conn. 141, 145.

We apply this rule when examining the apparent conflict between the "equal protection" clause of article 14 of the amendments to the Constitution of the United States and its counterpart in article 1 in the Constitution of Connecticut.

The Legislature has, in section 1364e, divided the citizens of this state into two categories in so far as the procedure of the courts shall be applied. In one category are the residents of, their creditors, and the owners of property in cities of more than fifteen thousand population; in the other are the residents and their creditors and the owners of property in all other communities. To these latter are given one set of rules of procedure, which specifically allows a right of appeal from the minor courts to the Court of Common Pleas or the Superior Court and a trial *de novo.* To the former group, whether its terms are mandatory or not, is given the right of appeal directly to the Supreme Court of Errors. If the terms of the act are mandatory then this former class is given only the right of appeal direct to the Supreme Court of Errors. In either event, one class is to be treated differently than the other in respect to court procedure.

If the claim of the appellee in his motion to dismiss is correct, the right given to the former class may be no right at all but a difficult or impossible procedure. There can be little question that the rights given to these two categories are substantially

different and so different as to constitute discrimination between them.

Discrimination, in itself, is not contrary to the guarantee of our constitutions, federal or state. *Bankers Trust Co. vs. Blodgett,* 96 Conn. 361, 371.

Our court says primarily the question of classification is for the Legislature and the courts will not interfere unless the classification is clearly unreasonable. A statute does not constitute denial of the equal protection of the laws merely because it extends to some persons privileges denied to others or imposes restrictions or liabilities on some but not on others. Such discriminations render legislation void where they are arbitrary or unreasonable, but not where they are based on real differences in the subject matter and are reasonable in extent. *Silver vs. Silver,* 108 Conn. 371, 378.

There seems to be no logical or reasonable basis for these acts to differentiate between some communities and others as they attempt to do. The differentiation is not reasonable but is rather arbitrary. This becames clear when we consider that the act provides population shall be determined as of a federal census taken some nine years ago, without regard to actual population at the present time and without providing for changing the operation of the act when communities increase or decrease in population.

I do not feel there is good reason for differentiating between communities because of their population and that the number "fifteen.thousand" is a reasonable point at which to demarcate the classification. Such reason or reasons cannot be argued in favor of this act. It is, therefore, obvious that the classification adopted by the Legislature as to population does not, in fact, make the operation of the act depend on population at all.

If the court could, it would be obliged to find some justification for such classification, but the standard set by the act cannot be construed to mean that population is the real basis for the classification and the classification is, therefore, arbitrary and unreasonable.

One might feel better satisfied with the classification if it were a geographical, economical, social or some principle or expediency forming a reasonable basis for such distinction.

This situation raises another question under article 1, section

21 of the Constitution of this State, which provides that "the right of trial by jury shall remain inviolate."

Considering section 1364e in connection with the related section in chapter 281b of the 1939 Supplement, and in particular with section 1365e, there arises a doubt as to the validity of theses sections as violating the right of trial by jury. This latter section, in effect, denies to the plaintiff in any action such as the one in question, where the matter in demand is less than the minimum amount which gives jurisdiction to the Court of Common Pleas or to the Superior Court, as the case may be, the right to a jury trial. There is no provision amending pre-existing legislation which would allow him to bring an action where the matter in demand is less than one hundred dollars to either of said courts.

Since the sections of chapter 281b are to a great extent dependent one upon the other, being in effect an attempt to fix a new system of jurisdiction, practice and procedure for minor courts, it is proper to consider one section with reference to another. It is, therefore, incumbent upon the court to construe section 1364e as its operation may be affected by section 1365e, it being apparent that there is contained in these sections a denial of the right to a jury trial, contrary to our Constitution, and unless the court can find that the special act is not repealed by implication it might be necessary to hold section 1364e invalid.

In endeavoring to reach a conclusion by which these acts may be reconciled and summarizing from the reasons heretofore given, I think the words used in section 1364e, taken in their ordinary significance, the context of the entire section, the history of former legislation concerning appeals from the city court, the lack of special words of repeal, the lack of notation denoting the appeal, the impossibility of implied repeal, the necessity of construing both acts so that they will have concurrent effect, the lack of inconsistencies, the one with the other, the operation of section 1364e as it may be interpreted, the lack of words of repeal in section 1370e, the unreasonable and arbitrary classification attempted by the Legislature, the denial of the right of trial by jury by the provisions of these related sections, I am convinced that both acts should stand, that both are valid and operative and are of concurrent effect and operation and that an aggrieved party has an alternative right of appeal from the City Court of Waterbury and that the said

sections of the Public Acts do not remove previously existing rights.

Courts "cannot attribute to the legislature an implied intention to wholly abandon a policy which has controlled such proceedings for a great many years and which has heretofore been recognized as essential to the justice and reasonableness of that mode of proceeding." *Antman vs. Connecticut Light & Power Co.*, 117 Conn. 230, 236; citing *Miller vs. Colonial Forestry Co.* 73 Conn. 500, 505.

A litigant in a suit at law, if not entitled to a trial by jury because the constitution in such case may not so provide, yet is entitled to have an impartial tribunal, with the usual rights and privileges which attend judicial investigations. *New York, N. H. & H. R. R. Co. vs. Long,* 69 Conn. 424, 437, cited and approved in *Antman vs. Connecticut Light & Power Co., supra,* 237.

"An intent on the part of the legislature to enact a law of such doubtful constitutionality is not readily to be inferred." *Antman vs. Connecticut Light & Power Co., supra,* 237.

For the reasons stated the motion to dismiss is denied.